UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN ALLEN ASHBAUGH, | 1:08-CV-01894 JMD HC |
| Petitioner, | ORDER DENYING PETITIONER FOR WRIT OF HABEAS CORPUS |
| v. | |
| JAMES A. YATES, | ORDER DIRECTING CLERK OF COURT TO ENTER JUDGEMENT |
| Respondent. | ORDER DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY |

Martin Allen Ashbaugh ("Petitioner") is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a jury verdict on August 26, 2005, finding Petitioner guilty of two counts evading a law enforcement office and causing injury, one count of child endangerment, and one count of transportation of a controlled substance. (Answer at 2; Pet. at 2). Petitioner was sentenced to a prison term of fourteen years. (Pet. at 2).

Petitioner appealed his conviction to the California Court of Appeal, Fifth Appellate District. (*See* Lod. Doc. 1). The appellate court issued a reasoned opinion on August 1, 2006, striking one of the counts of evading an officer but affirming the remainder of the convictions. (*See* Lod. Doc. 4).

Petitioner then filed a petition for review to the California Supreme Court, which the court denied without prejudice to any relief Petitioner might be entitled to pending the United States Supreme Court's decision in *Cunningham v. California*, 549 U.S. 270 (2007). (*See* Lod. Docs. 5, 6).

1    Subsequently, Petitioner filed a second petition for review to the California Supreme court
2 raising the same claims as contained in the first petition for review. (*See* Lod. Doc. 7). The
3 California Supreme Court dismissed review of this petition in light of the California Supreme
4 Court's issuance of *People v. Black*, 41 Cal.4th 799 (2007).
5    On December 10, 2008, Petitioner filed the instant federal petition for writ of habeas corpus.
6    On April 3, 2009, Respondent filed a response to the petition. Petitioner did not file a
7 traverse to the answer.

<u>Consent to Magistrate Judge Jurisdiction</u>

   On December 29, 2008, Petitioner consented, pursuant to Title 18 U.S.C. section 636(c)(1), to have a magistrate judge conduct all further proceedings, including the entry of final judgment. (Court Doc. 5). Respondent consented to the jurisdiction of a magistrate judge on February 19, 2009. (Court Doc. 10). On November 19, 2009, the case was reassigned to the undersigned for all further proceedings. (Court Doc. 15).

## FACTUAL BACKGROUND[1]

> At approximately 6:30 p.m. on August 13, 2003, California Highway Patrol (CHP) officer Perry Miller saw defendant driving a car in the area of Clinton and Blackstone Avenues in Fresno. He decided to stop the car after defendant violated several traffic laws. Defendant was attempting a three-point turn when he saw Miller; Miller signaled to him to pull over. There was a female in the passenger seat of the car. Defendant did not stop, and Miller followed him with his lights flashing and his siren on.
>
> Defendant was pursued by Miller for over 14 minutes and 12 miles, on the streets and highways. Defendant failed to stop at numerous stop lights, exceeded the speed limit, and violated several other traffic laws. In the beginning of the pursuit it appeared that defendant was driving somewhat cautiously.
>
> The manner of defendant's driving changed when he was exiting Freeway 41 at the Herndon Avenue exit. He drove onto the shoulder of the road to avoid the cars on the off-ramp. He accelerated and turned south on Fresno Street. Miller continued to follow defendant, and the pursuit was also being monitored by a CHP helicopter overhead. When defendant reached the intersection of Sierra Avenue and Fresno

---

[1] These facts are derived from the California Court of Appeal's opinion issued on August 1, 2006. (*See* Lod. Doc. 4). Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a determination of fact by the state court is presumed to be correct unless Petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); *see also Sanders v. Lamarque*, 357 F.3d 943, 948 (9th Cir. 2004). Here, Petitioner has not presented evidence that would permit the Court to set aside the presumption of correctness that has attached to the State court's factual findings.

Street, the light was red. He went through the red light without slowing or braking.

Andrea Brown, the flight officer in the helicopter, advised the sergeant monitoring the pursuit that defendant's car was speeding at approximately 80 miles per hour and that the defendant "blew" the light at Sierra Avenue and Fresno Street. Defendant continued to drive down Fresno Street and went through the intersection at Escalon Avenue. As Miller approached Escalon and defendant approached Bullard Avenue, approximately a quarter of a mile away, the sergeant monitoring the pursuit told the helicopter officer to call off the pursuit. The helicopter officer told Miller to call off the pursuit. Miller heard the pursuit being canceled when he reached Escalon and defendant was at the red light at Bullard. Miller turned off his lights and sirens at or near the time defendant ran the red light at Bullard and crashed into a red vehicle driving across the intersection.

Stephanie Dougan, defendant's passenger and the mother of his children, was partially ejected from the car. She died. The driver of the red vehicle was severely injured and the passenger was also injured. When Miller was at defendant's car attempting to aid Dougan, defendant's two-year-old son popped up from the back seat. He was not injured. Several other cars were damaged as a result of the collision, and one small girl in one of the other cars received a large bump to her forehead.

Officers found methamphetamine in a fanny pack in the car.

Former reserve deputy sheriff Jesse Marquez testified that he engaged in a pursuit of a car driven by defendant in 1991. During the pursuit defendant drove 60 to 65 miles per hour in a 40-mile-per-hour zone. He failed to stop at intersections when the light was red. He drove over a curb and eventually ran into a tree. He fled the scene. He was convicted of eluding a law enforcement officer during a pursuit.

(Lod. Doc. 4, Opinion of the California Court of Appeal, Fifth Appellate District, at 2-3).

## DISCUSSION

**I.    Jurisdiction**

A person in custody pursuant to the judgment of a state court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. Petitioner is currently incarcerated in Pleasant Valley State Prison[2] and Petitioner's custody arose from a conviction in the Fresno County Superior Court. (Pet. at 2). As Fresno County falls within this judicial district, 28 U.S.C. § 84(b), the Court has jurisdiction over Petitioner's application for writ of habeas corpus. *See* 28 U.S.C. § 2241(d) (vesting concurrent

---

[2] Pleasant Valley State Prison is located in the city of Coalinga, which is also in Fresno County, California.

jurisdiction over application for writ of habeas corpus to the district court where the petitioner is currently in custody or the district court in which a State court convicted and sentenced Petitioner if the State "contains two or more Federal judicial districts").

**II.     ADEPA Standard of Review**

On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment. *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by Lindh*, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)). The instant petition was filed in 2008 and is consequently governed by the provisions of the AEDPA, which became effective April 24, 1996. *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003). Thus, the petition "may be granted only if [Petitioner] demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)); *see Lockyer*, 538 U.S. at 70-71.

As Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment, 28 U.S.C. § 2254 remains the exclusive vehicle for Petitioner's habeas petition. *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) (quoting *White v. Lambert*, 370 F.3d 1002, 1006 (9th Cir. 2004) in holding that, "[s]ection 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction'").

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id*. (quoting *Williams*, 592 U.S. at 412). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or

principles set forth by the Supreme Court at the time the state court renders its decision." *Id*. Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Lockyer*, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. *See Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003); *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999). Furthermore, AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002).

The initial step in applying AEDPA's standards requires a federal habeas court to "identify the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one State court has adjudicated Petitioner's claims, the Court analyzes the last reasoned decision. *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the

U.S. District Court
E. D. California

5

presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order). Thus, a federal habeas court looks through ambiguous or unexplained state court decisions to the last reasoned decision in order to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. *Bailey v. Rae*, 339 F.3d 1107, 1112-1113 (9th Cir. 2003). Here, the California Court of Appeal and the California Supreme Court were the only courts to have adjudicated Petitioner's claims. As the California Supreme Court summarily denied Petitioner's claims, the Court looks through those decisions to the last reasoned decision; namely, that of the California Court of Appeal. *See Ylst v. Nunnemaker*, 501 U.S. at 804.

### III.     Review of Petitioner's Claims

Petitioner incorporated the claims contained in his petition for review to the California Supreme Court.[3] Specifically, Petitioner incorporates the claim that his federal constitutional rights were violated by: (1) insufficient evidence to support the conviction for evading a peace officer; (2) the trial court's issuance of an erroneous jury instruction; (3) trial counsel's ineffective assistance of counsel; and (4) the imposition of an aggravated term in violation of his Sixth Amendment rights.[4]

### *A.     Ground One: Sufficiency of the Evidence*

In his first ground for relief, Petitioner contends that the there was insufficient evidence to support his conviction for evading a law enforcement officer. Petitioner basis this contention on the argument that the police officers were no longer in pursuit at the time of the collision as the pursuit had been called off. (Lod. Doc. 5 at 16-17).

\\\

---

[3] While Petitioner states that he is incorporating his opening brief on appeal, the case number Petitionet provides is actually for the petition for review to the California Supreme Court. (Pet. at 6). Furthermore, the Court addresses only the claims contained in subsection (3) of his petition for review as Petitioner alleges that those claims violated his federal constitutional rights. Subsections (1) and (2) allege only that the jury instruction was erroneous, which is not a grounds for federal habeas corpus relief. *See Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991) (citing *Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6 (1983)).

[4] Petitioner set forth two additional claims for relief in the petition, contending that he has a Sixth Amendment right to have a jury find the facts upon which he was sentenced to the upper term and that he was deprived of this right, and the right to due process of the law, when the trial court made findings of facts to impose a sentence beyond the statutory maximum. As both of these claim address the same constitutional violation complained of in claim four, the Court addresses these claims together.

In reviewing sufficiency of evidence claims, California courts expressly follow the standard articulated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See People v. Smith*, 37 Cal.4th 733, 738-739 (Cal. 2005); *see also People v. Catlin*, 26 Cal.4th 81, 139 (Cal. 2001). "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005) (noting under AEDPA, a petition for habeas corpus may only be granted where the state court's application of *Jackson* was objectively unreasonable), *cert. denied*, *Allen v. Juan H.*, 546 U.S. 1137 (2006). Pursuant to the Supreme Court's holding in *Jackson*, the test to determine whether a factual finding is fairly supported by the record is as follows, "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *see also Lewis v. Jeffers*, 497 U.S. 764, 781 (1990).

Sufficiency of evidence claims are judged by "the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324, n. 16. Furthermore, this Court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); *Kuhlmann v. Wilson*, 477 U.S. 436, 459 (1986). This presumption of correctness applies to State appellate determinations of fact as well as those of the State trial courts. *Tinsley v. Borg*, 895 F.2d 520, 525 (9th Cir. 1990). Although the presumption of correctness does not apply to State court determinations of legal questions or to mixed questions of law and fact, the State court's factual findings underlying those determinations are entitled to the same presumption. *Sumner v. Mata*, 455 U.S. 539, 597 (1981).

Petitioner does not challenge the evidence with respect to all elements of his conviction for evading a pursuing peace officer (Cal. Veh. Code § 2800.3); rather, Petitioner challenges the evidence pertaining to the requirement that he elude a pursuing peace officer's motor vehicle. Petitioner claims that it was undisputed that the pursuit had ended when the collision occurred. The California Court of Appeal rejected Petitioner's claim, highlighting the following evidence in determining that the evidence was "reasonably susceptible to the interpretation that the collision occurred at or before the time Miller ended his pursuit." (Lod. Doc. 4 at 5):

>Miller testified that his sergeant said to cancel the pursuit as he (Miller) reached the intersection of Escalon. He testified that he was reaching for his radio to advise dispatch that he heard the sergeant cancel the pursuit and he was canceling the pursuit when defendant went through the intersection. He saw the collision before he got his mouth to the microphone to say he was canceling the pursuit.
>Leticia Castaneda, a witness called by the defense, testified that she saw the police lights going on, she could tell they were in pursuit, and that is when she saw the accident occur. Joan Hemming, another witness called by the defense, was pumping gas at the intersection of Bullard and Fresno. She heard the sirens and almost immediately thereafter heard the crash.

(Lod. Doc. 4 at 5-6).

Viewing such evidence in the light most favorable to the prosecution, a rational trier of fact could indeed conclude that the pursuit was ongoing when the crash occurred. Therefore, the record provides sufficient evidence to support Petitioner's conviction. Consequently, the Court finds that Petitioner is not entitled to habeas corpus relief on this ground.

### B.     Ground Two: Erroneous Jury Instruction

Petitioner contends that his constitutional rights were violated by the issuance of the felony murder instruction with CALJIC No. 12.85. (Lod. Doc. 5 at 17-22). Petitioner argues that the combination of the two jury instruction resulted in the jury using the formula for "willful or wanton disregard" contained in CALJIC No. 12.85 to find the criminal negligence element of child endangerment (CALJIC No. 9.37), thereby violating his right to have the prosecutor prove every element of the crime beyond a reasonable doubt.

"Due process requires that jury instructions in criminal trials give effect to the prosecutor's burden of proving every element of the crime charged beyond a reasonable doubt." *Townsend v. Knowles*, 562 F.3d 1200, 1209 (9th Cir. 2009) (citing *Middleton v. McNeil*, 541 U.S. 433, 437 (2004)); *see also Carella v. California*, 491 U.S. 263, 265(1989). Thus, an erroneous jury instruction "directed toward an element of the offense may rise to the level of a constitutional defect." *Byrd v. Lewis*, 566 F.3d 855, 862 (9th Cir. 2009) (citing *Neder v. United States*, 527 U.S. 1, 9-10 (1999)). "Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Middleton*, 541 U.S. at 437. Federal collateral relief for errors in the jury charge requires that a petitioner demonstrate that the erroneous instruction so infected the entire trial such that the resulting conviction violated due process and rendered the trial

fundamentally unfair. *See Estelle*, 502 U.S. at 72; *see also Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973) in finding that a habeas court must not merely consider whether an "instruction is undesirable, erroneous, or even universally condemned" but must instead determine "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process'"). "The jury instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *Id*. (citation and internal quotation marks omitted). "If the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Middleton*, 541 U.S. at 437.

The California Court of Appeal rejected this claim, finding that Petitioner had not established that there was a reasonable probability that the "willful and wanton disregard" definition contained in CALJIC No. 12.85 to the requirement contained in CALJIC No. 9.37 that Petitioner "willfully cause[d] or, willfully and as a result of criminal negligence, permit[ted] the child to be placed in a situation where his or her person or health was endangered." (Lod. Doc. 4 at 11). The appellate court noted that the jury was explicitly instructed that the set of instructions the court gave applied to those particular counts. CALJIC No. 12.85 applied to the count of evading a law enforcement officer while CALJIC No. 9.37 applied to child endangerment. As the presumption exists that the jury follows the instructions given to them, *Townsend*, 562 F.3d at 1209 (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)), there does not exists a reasonable probability the jury would have used instructions relating to the separate counts in the manner proposed by Petitioner. Thus, the Court finds that the appellate court did not unreasonably apply clearly established federal law and Petitioner is not entitled to habeas corpus relief on this ground.

### C.     Ground Three: Ineffective Assistance of Counsel

Petitioner contends that his Sixth Amendment right to counsel was violated by trial counsel's deficient performance, alleging that he was prejudiced by counsel's failure to object to the introduction of evidence that Petitioner was once affiliated with a gang. (Lod. Doc. 5 at 22-26).

\\\

\\\

An allegation of ineffective assistance of counsel requires that a petitioner establish two elements–(1) counsel's performance was deficient and (2) petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687(1984); *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994).   Under the first element, the petitioner must establish that counsel's representation fell below an objective standard of reasonableness, specifically identifying alleged acts or omissions which did not fall within reasonable professional judgment considering the circumstances. *Strickland*, 466 U.S. at 688; *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential and there exists a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 687; *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).

Secondly, the petitioner must show that counsel's errors were so egregious that the petitioner was deprived of the right to a fair trial, namely a trial whose result is reliable. *Strickland*, 466 U.S. at 687.   To prevail on the second element, the petitioner bears the burden of establishing that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Quintero-Barraza*, 78 F.3d at 1348 (quoting *Strickland*, 466 U.S. at 694).  A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. *Strickland*, 466 U.S. at 697.  Since prejudice is a prerequisite to a successful claim of ineffective assistance of counsel, any deficiency that was not sufficiently prejudicial to the petitioner's case is fatal to an ineffective assistance of counsel claim. *Id*.

The California Court of Appeal surmised that trial counsel had a strategic basis for not objecting to Petitioner's history of gang affiliation and that the introduction of such evidence did not prejudice Petitioner.  (Lod. Doc. 4 at 15-16).  Specifically, the state court stated that:

> In closing argument, defense counsel stated that defendant wanted him to express how defendant's life had changed since 1993, to consider who he is and how he got to where he is now. He argued that the prosecutor was ludicrous to suggest that defendant's actions in saying something to a gang banger somehow made him deserving of getting shot. Defense counsel argued that defendant is a changed man. Defense counsel argued that the sole reason the People brought up questions about the second shooting was to bring in evidence about gangs because everyone hates gangs.

> Defense counsel pointed out that defendant was never arrested, charged, or convicted of a gang crime nor was he ever arrested, charged or convicted of a violent crime. Defense counsel asked the jury to put the evidence in perspective.
> By his re-direct examination of defendant, his cross-examination of Rios, and his closing argument, defense counsel was able to show and argue that defendant was a changed man and he had never been arrested, charged or convicted of a gang crime or a violent crime. Defense counsel was able to better tell his story of defendant's life and how he got to the point he was at trial. Thus defense counsel's reason for failing to object may have been based on a sound tactical decision and does not amount to ineffective assistance of counsel.

(Lod. Doc. 4 at 16).

The Court finds questionable the appellate court's post hoc rationalization of counsel's reasons for failing to object to the introduction of the gang evidence. *See Moore v. Czerniak*, 574 F.3d 1092, 1108 (9th Cir. 2009) (stating, "[w]here the issue is whether counsel's performance was ineffective, we must decide that question based on what counsel's reasons for his decisions actually were, not on the basis of what reasons he could have had for those decisions"); *see also Richter v. Hickman*, 578 F.3d 944, 958 (9th Cir. 2009) (citing *Wiggins v. Smith*, 539 U.S. 510, 526-527 (2003) in stating, "[w]hen counsel offers no strategic reason for failing to perform what would otherwise constitute the duty of a reasonably competent counsel, we may not invent such a strategy by engaging in "a post hoc rationalization of counsel's conduct" in lieu of relying on "an accurate description of [counsel's] deliberations prior to [trial]'"). However, the Court does not find the appellate court's decision to be an unreasonable application of *Strickland* as the State court noted that the overwhelming evidence against Petitioner rendered the introduction of his previous gang affiliation harmless. As prejudice is a necessary precursor to relief under *Strickland*, Petitioner's failure to establish that he was prejudiced by the introduction of the evidence is fatal to his claim.

### D.     *Ground Four: Imposition of Upper Term*

Petitioner contends that the trial court's imposition of the upper terms violated his Sixth Amendment right to a jury trial and Fourteenth Amendment right to due process of the law.[5] (Lod.

---

[5] The United States Supreme Court has previously stated that, "the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Jones v. United States*, 526 U.S. 227, 246 n. 6) (1999). In *Apprendi v. New Jersey*, 530 U.S. 466, 475 (2000), the Supreme Court recognized that "[t]he Fourteenth Amendment commands the same answer."

Doc. 5 at 27-28). Petitioner's argument stems from the clearly established federal law derived from *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and its progeny. In *Apprendi*, the United States Supreme Court overturned a State sentencing scheme as violative of a criminal defendant's right to have a jury verdict based on proof beyond reasonable doubt. The sentencing scheme permitted a trial judge to enhance a defendant's penalty beyond the prescribed statutory maximum upon a finding by a preponderance of the evidence that the defendant committed the crime with racial animus. *Id*. at 469. The Supreme Court held that the Sixth Amendment right to a jury trial required that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to jury, and proved beyond a reasonable doubt." *Id.* at 490. In *Blakely v. Washington*, 542 U.S. 296, 303-304 (2004), the high court explained that the "statutory maximum" is the maximum sentence a judge may impose based exclusively on the facts reflected in the jury verdict or admitted by the defendant and not the maximum sentence a judge may impose after finding additional facts.

This claim was rejected by California Court of Appeal, whose decision relied exclusively on *People v. Black*, 35 Cal.4th 1238 (2005), to reject Petitioner's claim. (Lod. Doc. 3 at 2). In *Black*, the California Supreme Court held that California's determinative sentencing law satisfied federal constitutional law, stating:

> *Blakely* and *Booker*[*v. Washington*, 543 U.S. 220, 125 S.Ct. 738 (2005)]established a constitutionally significant distinction between a sentencing scheme that permits judges to engage in the type of judicial fact finding typically and traditionally involved in the exercise of judicial discretion employed in selecting a sentence from within the range prescribed for an offense, and a sentencing scheme that assigns to judges the type of fact-finding role traditionally exercised by juries in determining the existence or nonexistence of elements of an offense.

*Black*, 35 Cal.4th at 1253. The *Black* court went on to find that "in operation and effect, the provisions of the California determinate sentencing law simply authorize a sentencing court to engage in the type of fact-finding that traditionally has been incident to the judge's selection of an appropriate sentence within a statutorily prescribed sentencing range." *Id.* at 1254. The *Black* court held that the "presumptive" midterm does nothing more than establish a "reasonableness" constraint on an otherwise wholly discretionary sentencing choice akin to that which the United States Supreme Court has deemed constitutional. *Id*. at 1261.

\\\

     Similar to California's determinate sentencing law, the State sentencing schemes in both *Apprendi* and *Blakely* established an ordinary sentencing range but permitted the trial judge to impose a sentence in excess of that range if the judge determined the existence of specified facts not intrinsic to the crime. In *Blakely*, the United States Supreme Court held that a sentence in excess of the ordinary range was unconstitutional because it was based on facts that were not admitted by defendant or found true by the jury beyond a reasonable doubt. Consequently, in *Cunningham v. California*, 549 U.S. 270, 293 (2007), the United States Supreme Court held that the California Supreme Court's ruling in *Black* was erroneous. The *Cunningham* court noted that the middle term specified in California's statutes was the relevant statutory maximum for the purpose of applying *Blakely* and *Apprendi*. The high court further concluded that the imposition of the upper term based solely upon a trial judge's fact finding violated the defendant's Sixth and Fourteenth Amendment rights because it "assigns to the trial judge, not the jury, authority to find facts that expose a defendant to an elevated 'upper term' sentence." *Id*. at 274.

     Based on the foregoing, the California Court of Appeal's decision relying on *Black* is contrary to clearly established federal law in *Apprendi* and *Blakely*. However, this finding does not automatically entitle Petitioner to relief, as the "power to grant the writ of habeas corpus to a state inmate depends on his actually being 'in custody in violation of the Constitution or laws . . . of the United States.'" *Butler v. Curry*, 528 F.3d 624, 633 (9th Cir. 2008) (citing 28 U.S.C. § 2241(c)(3)). To this end, the Court must apply a *de novo* standard of review to determine whether a constitutional violation has occurred. *Id*.

     *Apprendi* and its progeny clearly establish that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. The prior conviction exception first enunciated in *Almendarez-Torres v. United States*, 523 U.S. 224, 247 (1998), is a limited exception. *Butler*, 528 FR.3d at 641. Here, the trial court imposed the upper terms on all counts based on the sole aggravating factor of Petitioner's numerous prior convictions, stating:

> In looking at factors in aggravation and mitigation in trying to determine an appropriate base term for the charges in this particular case, I do not find any factors in mitigation as they relate to the defendant or to the particular crime or crimes

> involved. As to the factors in aggravation, while probation has set forth many and counsel has clearly pointed out that many, if not most, of those are in question with the Blakely decision, *this Court finds that the prior record, the felony convictions in and of itself is a strike aggravating factor. The defendant did, while on the stand on cross examination, admit two prior felony convictions...The weight that I'm placing on the prior convictions is based on the mere fact that he had suffered prior convictions and the type of charges that they were over a period of time,a nd the Court finds that the sole factor in aggravation, his prior record of felony convictions, significantly outweighs any mitigating factor.*

(Lod. Doc. 12, Reporter's Transcript, Vol. X, at 1804-1805).

Here, the upper terms were imposed on the basis of Petitioner's prior convictions, which the Supreme Court has consistently held does not need to be found by a jury. Thus, the Court finds that Petitioner is not entitled to habeas corpus relief as his constitutional rights were not violated.

## IV.     Certificate of Appealability

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. *Miller-El v. Cockrell*, 123 S.Ct. 1029, 1039 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides that a circuit judge or judge may issue a certificate of appealability where "the applicant has made a substantial showing of the denial of a constitutional right." Where the court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 123 S.Ct. at 1034; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 123 S.Ct. at 1040.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of a constitutional right. Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. The Petition for Writ of Habeas Corpus is DENIED with prejudice;

2. The Clerk of Court is DIRECTED to enter judgment; and

3. The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

**Dated:    December 15, 2009**             **/s/ John M. Dixon**
                                             UNITED STATES MAGISTRATE JUDGE